UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MENACHEM LICHTER, individually and on behalf of all those similarly situated,

                Plaintiff,

-against-

MASSACHUSETTS MUTUAL LIFE INSURANCE CO. d/b/a/ MASSMUTUAL, MASSMUTUAL BROOKLYN, AARON KLEIN, JACOB KAHAN, SHLOIME HOFFMAN, SHIMON GREENWALD, JOHN DOE 1-10 and JANE DOE 1-10,

                Defendants.

22-CV-4488-LTS

---

## MEMORANDUM ORDER

Menachem Lichter ("Plaintiff") brings this proposed class action on behalf of himself and all those similarly situated asserting claims against Massachusetts Mutual Life Insurance Co. ("MassMutual"), MassMutual Brooklyn ("MMB") (together with MassMutual, the "Corporate Defendants"), Aaron Klein, Jacob Kahan, Shloime Hoffman, Shimon Greenwald (together with Klein, Kahan, and Hoffman, the "Individual Defendants"), and all unidentified agents who took part in the alleged schemes. (Docket entry no. 1-1 ("Complaint").) Plaintiff initiated this action in state court, and Defendants timely removed to federal court on May 31, 2022, pursuant to 28 U.S.C. section 1441. (Docket entry no. 1 ("Notice of Removal").) Plaintiff asserts various causes of action, including breach of contract against the Corporate Defendants, violations of the New York Labor law, N.Y. Lab. Law §§ 191, 193, against the Corporate Defendants, Klein and Kahan; claims for unjust enrichment, conversion, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and conspiracy to violate RICO, 18 U.S.C. § 1962(d), against all Defendants; and a claim for aiding

and abetting the same against Hoffman and Greenwald.  (Complaint.)  The Court has subject matter jurisdiction of this action pursuant to 18 U.S.C. sections 1331 and 1367.

Defendants have jointly moved to dismiss this action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket entry no. 14 (the "MTD").)  The Court has considered the parties' submissions carefully.  For the following reasons, the Motion is granted in its entirety, Plaintiff's federal claims are dismissed, and Plaintiff's remaining state claims are remanded to the New York County Supreme Court.

## BACKGROUND

The following facts are alleged in the Complaint and all of the Complaint's non-conclusory factual allegations are taken as true for the purposes of this motion practice.  Plaintiff entered a "Career Contract" agreement with MassMutual and its subsidiary, MMB, on February 28, 2013.  (Complaint ¶¶ 4-9.)  Under the terms of the Contract, Plaintiff worked as an insurance agent and was paid, in part, based on commissions from sales.  (Id. ¶ 22.)  Plaintiff worked for MassMutual from February 28, 2013, to December 31, 2021 (the "Relevant Period").  (Id. ¶ 50.)

Defendant Klein was a director at MMB with the title of "General Agent."  (Id. ¶ 29.)  Both Klein and Kahan are alleged to be "principals who exert dominion and control over MMB" and used "MMB and [MassMutual] as an enterprise to obtain funds and power unlawfully."[1]  (Id. ¶ 19.)  Defendants Hoffman and Greenwald were insurance agents working for the Corporate Defendants during the relevant period.  (Id. ¶ 17.)

---

[1]  Plaintiff does not allege Kahan's position at MMB with any greater specificity.  From the Defendants' brief, Kahan also appears to be a "General Agent" of MMB.  (Docket entry no. 15 ("Def. Mem.") at 2.)

During the relevant period, MMB earned various distinctions for its productivity, including the title of "the #1 producing office in the country." (Id. ¶ 26.) These awards meant that higher managers, such as Klein, received monetary bonuses. (Id. ¶ 29.) One key metric of productivity was whether the branch achieved a "minimum number of agents" who sold high-worth insurance policies. (Id. ¶¶ 27-28.) To inflate the number of high-performing agents, the Individual Defendants allegedly devised a scheme to present Plaintiff's earned commissions as sales earned by lower-performing agents (the "Commission Sharing Scheme"). (Id. ¶¶ 31-33.) In 2018, Plaintiff was coerced into giving a $12,000 commission to Greenwald, which was never returned despite Klein's assurances otherwise. (Id. ¶ 34.)

In addition to the commission sharing scheme, the Individual Defendants also pressured Plaintiff into providing donations to a third party, Congregation Broshiv, in exchange for kickbacks (the "Kickback Scheme"). (Id. ¶¶ 41-42.) Around November 2013, Klein threatened to withhold the payment of Plaintiff's outstanding commission — a sum of around $15,000 — if Plaintiff did not donate to the Congregation. (Id.) After Plaintiff made a $125,000 donation, Klein released his outstanding commission the next day. (Id. ¶¶ 42-43). On the same day that Plaintiff received his outstanding commission check, "another check was also released to [Hoffman] with an additional payout." (Id. ¶ 44.)

Plaintiff brings this proposed class action on behalf of himself and all other similarly situated employees and agents of MassMutual or MMB, who may have been subjected to similar conduct between February 28, 2013, and the date when judgment is entered in this action. (Id. ¶¶ 51-61.) Plaintiff initiated this action in the New York County Supreme Court on April 3, 2022. (Complaint.)

DISCUSSION

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted.  (See MTD.)  When determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [he is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).

*Federal Claims*

Plaintiff pleads two federal causes of action: substantive violations of RICO, 18 U.S.C. § 1962(c), and conspiracy to violate RICO, 18 U.S.C. § 1962(d).  (Complaint ¶¶ 126, 146.)  To plead a cognizable RICO claim, Plaintiff must allege facts showing that the Defendants "engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property." Kottler v. Deutsche Bank AG, 607 F. Supp. 2d

447, 458 (S.D.N.Y. 2009) (citing Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).

A RICO "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (Westlaw through P.L. 118-30). A pattern of racketeering activity requires at least two predicate acts of racketeering activity within ten years. 18 U.S.C. § 1961(5); see also Zito v. Leasecomm Corp., No. 02-CV-8074-GEL, 2004 WL 2211650, at * 6 (S.D.N.Y. Sept. 30, 2004). The predicate acts that qualify as "racketeering activity" are set forth in 18 U.S.C. section 1961(1). Additionally, to state a claim for conspiracy to violate RICO, Plaintiff must plead facts showing that Defendants had (1) an agreement to violate substantive RICO provisions, and (2) at least one Defendant performed an overt act in furtherance of that agreement. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244 (2d Cir. 1999) (citing Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986)).

Plaintiff asserts that all Defendants collectively represent an association-in-fact enterprise within the meaning of RICO (the "MassMutual Enterprise"). (Complaint ¶ 146). Plaintiff further asserts that the MassMutual Enterprise was engaged in two schemes: to deprive Plaintiff and other class members of their earned commissions (the "Commission Sharing Scheme"); and to coerce Plaintiff and other class members into making donations to third parties in exchange for kickbacks (the "Kickback Scheme"). (Complaint ¶ 128; see also docket entry no. 18 ("Pl. Mem.") at 16.) The alleged "pattern of activity" consisted of various acts of mail and wire fraud in violation of 18 U.S.C sections 1341 and 1343. (Complaint ¶ 133.) Specifically, Plaintiff alleges, "Defendants regularly transmitted . . . writings, signs, signals, pictures and sounds (the "Wirings"), and also regularly caused matters and things to be placed in

any post office or authorized depository . . . to be sent or delivered by private or commercial interstate carrier (the "Mailings")."  (Id. ¶ 134.)  These Wirings and Mailings consisted of "various marketing, advertising, sales material, and other MassMutual Enterprise generated documents" (id. ¶ 135), and "included the use of [private] gmail addresses" (id. ¶ 136).

Defendants argue, inter alia, that the allegations in the Complaint are partially time-barred and fail to establish a pattern of predicate acts of racketeering activity sufficient to sustain either a substantive RICO or a conspiracy claim.  (Def. Mem. at 21-30.)  The Court agrees.

First, the Court finds, from the face of the Complaint, that Plaintiff is time-barred from asserting a RICO claim on the basis of the Kickback Scheme.  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Ellul v. Congregation of Christian Bros., 774 F.3d 791, 789 n.12 (2d Cir. 2014) (citation omitted); see also Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").  The statute of limitations for a civil RICO claim is four years.  In re Merrill Lynch Ltd. P'ship Litig., 154 F.3d 56, 58 (2d Cir. 1998).  The statute begins to run "upon a plaintiff's discovery of the injury, not discovery of the underlying pattern of predicate acts."  Nat'l Grp. for Comm'ns & Computs. Ltd. v. Lucent Techns Inc., 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) (citing Rotella v. Wood, 528 U.S. 549, 555-57 (2000)).  Furthermore, the continuing violations doctrine does not apply to claims under RICO; instead, "RICO actions are subject to a rule of separate accrual [per injury]."  Bankers Tr. Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988).

The only specific injury that Plaintiff alleges resulted from the Kickback Scheme occurred in November 2013, when Klein withheld Plaintiff's commission to coerce him to donate to Congregation Broshiv.  (Complaint ¶¶ 41, 42, 127.)  Plaintiff argues this claim is timely because the four-year statute of limitations should be tolled due to the Defendants' fraudulent concealment.  (Pl. Mem. at 8-9.)  To establish fraudulent concealment, Plaintiff must allege "(1) that the Defendant concealed from him the existence of his cause of action[]; and (2) that he remained in ignorance of the violation during the limitations period; and (3) that the plaintiff's continuing ignorance as to the claim was not a result of a lack of due diligence."  In re Merrill, Bofa, & Morgan Stanley Spoofing Litig. ("Merrill Spoofing"), 2021 WL 827190, at *9 (S.D.N.Y. Mar. 4, 2021), aff'd sub nom. Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc., 41 F.4th 71 (2d Cir. 2022) (citation omitted).  Plaintiff asserts that the Defendants' allegedly fraudulent misrepresentations that Plaintiff "would be paid his commission in full" prevented him from realizing that he had been injured.  (Pl. Mem. at 9 (citing Madera v. Metro. Life Ins. Co., No. 99-CV-4005-MBM, 2002 WL 1453827 (S.D.N.Y. July 3, 2022)).)  Plaintiff's argument simply does not measure up to his own factual allegations.  Plaintiff alleges that he *was* paid in full in November 2013, albeit after he was forced to give a sizeable donation to the Congregation.  (Complaint ¶ 14.)  Nothing on the face of the Complaint even suggests that, "based on the method by which the fraud was committed, the plaintiff would be oblivious to the fact that he was harmed at all."  Merrill Spoofing, 2021 WL 827190, at *9.  To the contrary, the alleged harm was readily apparent to the Plaintiff on the day it occurred.  Thus, the doctrine of fraudulent concealment is inapplicable, and any RICO claims arising from the 2013 allegations are time-barred.

Plaintiff's claim based on his alleged 2018 injury resulting from the commission sharing scheme may be timely.[2]  This claim fails on the merits, however, because Plaintiff has not alleged facts sufficient to show that Defendants participated in a pattern of racketeering activity within the meaning of RICO.  See 18 U.S.C. § 1961(5).

Plaintiff alleges that Defendants "regularly" committed mail and wire fraud by transmitting, through applicable instrumentalities, "various marketing, advertising, sales material, and other MassMutual Enterprise generated documents" in furtherance of the Scheme. (Complaint ¶¶ 135, 138.)  "In cases in which the plaintiff claims that the mails or wires were [not fraudulent themselves but were] simply used in furtherance of a master plan to defraud . . . a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient."  In re Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (internal citations omitted).[3]  However, courts may dismiss RICO claims "where the purported acts of mail fraud consisted of nothing more than routine business communications."  Am. Med. Ass'n v. United Healthcare Corp., 588 F. Supp. 2d 432, 443

---

[2] Plaintiff alleges sometime in 2018 he was injured when he was deprived of $12,000 of his earned commission, but he fails to plead when precisely that event occurred.  (See Complaint ¶ 32.)  Plaintiff initiated this action on April 3, 2022.  (Id.).  Any claim accrued before April 3, 2018, would also be untimely.  Because it is not obvious on the face of the Complaint whether Plaintiff's injury falls outside of the four-year statute of limitations, the Court cannot find the claim time-barred at this stage.  Ghartey, 869 F.2d at 162.

[3] Defendants' argument that Plaintiff's allegations fall short of the heightened pleading requirements of Rule 9(b) misstates the law.  (See Def. Mem. at 25.)  Courts apply different pleading standards for predicate acts of mail fraud where the mailings "were themselves fraudulent" and for those where the mailings "were simply used "in furtherance of a master plan to defraud."  See Am. Med., 588 F. Supp. 2d at 443.  "[A] RICO plaintiff need not plead particularity if the complaint alleges that the mails or wires were 'simply used in furtherance of a master plan to defraud[.]'"  Cruz v. FXDirectDealer, LLC, 855 F. Supp. 2d 89, 98 (S.D.N.Y. 2012) (quoting Sumitomo Copper, 995 F. Supp. at 456).

(S.D.N.Y. 2008).  A routine business communication serving as the basis for mail fraud under RICO must have content sufficient to provide "a reasonable inference of fraudulent intent." Atl. Gypsum Co., Inc. v. Lloyds Intern. Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990); see also O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990).  Here, the alleged Mailings and Wirings comprised advertising materials such as those routinely found on MassMutual's website and — Plaintiff asserts — contained misrepresentations intended simply to induce agents and "their clients to sale [sic.] and purchase MassMutual insurance and financial products/policies pursuant to terms Defendants knew . . . they would not fulfill."  (Complaint ¶¶ 135, 139-40; see also Pl. Mem. at 17.)  However, the Complaint fails to allege any facts to support that implication of fraudulent intent.  To the contrary, MassMutual's only promotional representations delineated in the Complaint advertise MassMutual's investment strategies and customer loyalty.  (See Complaint ¶¶ 5-7.)  Plaintiff has not alleged facts contesting the accuracy of these promises, and, regardless, they bear no relationship whatsoever to the alleged commission sharing scheme.  Plaintiff has alleged no information in the Mailings or Wirings that was instrumental in, or even pertinent to, the commission sharing scheme.  Therefore, the Court finds no indicia of fraudulent intent necessary to establish mail fraud on the basis of the Mailings or Wirings.  See O'Malley, 896 F.2d at 707.

    Plaintiff has therefore failed to plead the requisite pattern of racketeering activity, which is fatal to his RICO claim.[4]  18 U.S.C. § 1962.  Additionally, in the circumstances present here, Plaintiff's failure to state a claim for a substantive RICO violation is also fatal to his RICO conspiracy claim, given that he "rel[ies] on the same factual predicate to plead both the

---

[4]  Because the Court finds Plaintiff has failed to establish a required element of his RICO claim, it need not consider the question of whether Plaintiff has adequately plead facts sufficient to establish the remaining elements of a RICO claim.

substantive RICO violation and the conspiracy claim." Zamora v. FIT Int'l Grp. Corp., 834 F. App'x 622, 626 (2d Cir. 2020) (citing First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 164 (2d Cir. 2004) ("[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims.")).  (See Complaint ¶ 146.)

For the foregoing reasons, Plaintiff's claims asserting violations of RICO and conspiracy to commit RICO violations are dismissed for failure to state a claim upon which relief may be granted.

*Remaining State Claims*

Having dismissed the claims of which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(c).  See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.").

LEAVE TO AMEND

Plaintiff has not requested leave to amend in the event the Complaint is dismissed. (See Complaint; Pl. Mem.)  Where a Plaintiff does not seek "leave to amend his complaint . . . the Court affords him no such opportunity." Schwartz v. HSBC Bank USA, N.A., No. 14-CV-9525-KPF, 2017 WL 95118, at *8 (S.D.N.Y. Jan. 9, 2017) (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1132 (2d Cir. 1994) ("Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to

order a case closed when leave to amend has not been sought.")).  Leave to amend is therefore denied.

CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is granted in its entirety, Plaintiff's federal claims are dismissed, and the Court declines to exercise supplemental jurisdiction of the remaining state law claims.  This case is hereby remanded to the New York County Supreme Court for all further proceedings.

This Memorandum Order resolves docket entry no. 14.  The Clerk of Court is respectfully directed to effectuate the remand and close this case.

SO ORDERED.

Dated: New York, New York
January 29, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge